**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

**NOVERTO ROSADO**, *individually and on behalf of all others similarly situated,*

        *Plaintiff,*

        v.

**ROCKET MORTGAGE, LLC,**

        *Defendant.*

Case No.:

**COMPLAINT**

**Jury Trial Demanded**

## CLASS-ACTION COMPLAINT

Plaintiff, Noverto Rosado ("Rosado" or "Plaintiff") individually and on behalf of all others similarly situated, files this Class-Action Complaint against Defendant Rocket Mortgage, LLC ("Rocket Mortgage" or "Defendant"). In support thereof, Plaintiff states as follows:

### NATURE OF THE CASE

1.     Plaintiff brings this action individually and on behalf of all others similarly situated, seeking damages and any other available legal or equitable remedies resulting from the unlawful actions of Defendant. Defendant violated Plaintiff and the putative class-members' rights by making two or more solicitation calls or texts to residential subscribers after receiving an instruction to stop calling/texting. Those acts and omissions, which are described at length herein, were in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* and the TCPA's corresponding regulations promulgated by the Federal Communications Commission ("FCC") at 47 C.F.R. § 64.1200 *et seq.*

//

1

**BACKGROUND ON THE TCPA**

2.    In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights – specifically, the right to be left alone from unwanted telemarketing calls.

3.    A leading sponsor of the TCPA described telemarketing "robocalls" the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

4.    Courts have recognized a private cause of action under 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d) for failing to implement adequate internal do-not-call policies. *Charvat v. NMP, LLC*, 656 F.3d 440, 448 (6th Cir. 2011); *Dobronski v. Selectquote Ins. Servs.,* 462 F. Supp. 3d 784, 791 (E.D. Mich. 2020) (concluding same).

5.    While the TCPA's statutory language does explicitly define the term "call", the Ninth Circuit observed that Webster's Dictionary does, defining a "call" as an action taken "to communicate with or try to get into communication with a person by a telephone." *Satterfield v. Simon & Schuster, Inc*. 569 F.3d 946, 953 (9th Cir. 2009) (citing Webster's Third New International Dictionary 318 (2002)).

6.    Further, 47 U.S.C. § 227(c)(1) of the TCPA commissioned the FCC to promulgate rules relating to the Do-Not-Call Registry.  47 U.S.C. § 227(c)(1). In accordance with its statutory mandate, the FCC codified its rule that text messages are "calls."  47 C.F.R. § 64.1200(e).

7.    In *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016), the US Supreme Court held "[a] text message to a cellular telephone, it is undisputed, qualifies as a 'call'…"

8.    Accordingly, text messages are calls.

9.    Decades after the passage of the TCPA, the scourge of robocalls, telemarketing and spam text messages continues unabetted.

10.     Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the Federal Communications Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

11.     In fact, in 2021 alone, there were over five million complaints from Americans to the FTC about unwanted telemarketing calls. Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 5, 2022), https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

12.     The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, The Wall Street Journal, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

**JURISDICTION AND VENUE**

13.     This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

14.     This Court has personal jurisdiction over Defendant, as Defendant is headquartered and systematically conducts business in the State of Michigan.

15.     Moreover, where Defendant is headquartered in this District, venue is proper under 28 U.S.C. § 1391(b)(1).

## PARTIES

16.     Plaintiff Noverto Rosado is an individual who resides in Mason, Ohio.

17.     Plaintiff is a "person" as that term is defined by 47 U.S.C. §153(39).

18.     Defendant Rocket Mortgage, LLC is a Michigan limited liability company with its principal office address at 1050 Woodward Ave., Detroit, MI 48226-1906.

19.     Defendant is a "person" as that term is defined by 47 U.S.C. §153(39).

20.     Defendant acted through its employees, agents, vendors, contractors, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees and representatives.

## FACTUAL ALLEGATIONS

21.     At all times relevant hereto, Plaintiff, Noverto Rosado, owned a cell phone, the number for which was (216) XXX-7783.

22.     At all times relevant hereto, Plaintiff used that number primarily for personal and residential purposes, such as speaking with friends and family.

23.     Between May and June of 2026, Defendant sent Plaintiff at least forty (40) unsolicited and unconsented phone calls and text messages, promoting Defendant's mortgages which Plaintiff did not want or need.

4

24.     On May 4, 2026, at 9:32 AM, Plaintiff received a phone call from the number (844) 986-2168, which he answered. The caller identified that he was calling on behalf of Rocket Mortgage, and Plaintiff responded that he was not interested and did not wish to be contacted.

25.     In that communication, Plaintiff made it clear further communications were unwanted, and revoked any consent that could have existed at that time.

26.     Nevertheless, Plaintiff received dozens of voice calls from Rocket Mortgage, using that same 844 phone number.

27.     Furthermore, on or around May 27, 2026, Plaintiff received a phone call from the number (972) 499-2001, whose called ID identified it as "Rocket Mortgage".

28.     The next day, on or around May 28, 2026, Plaintiff then received a text message from that number, which again disclosed that it originated from Rocket Mortgage. A screenshot of that text message is embedded below:



29.     Between May 28 and June 2, 2026, Plaintiff has received at least five (5) additional, similar text messages from "Willie with Rocket Mortgage".

5

30.     An inexhaustive list of calls and texts made by Defendant to Plaintiff is as follows:

| Date | Time | Call/text | Calling Number |
|---|---|---|---|
| 5/4/2026 | 9:32:00 AM | Call | (844) 986-2168 |
| 5/4/2026 | 12:33:00 PM | Call | (844) 986-2168 |
| 5/4/2026 | 3:34:00 PM | Call | (844) 986-2168 |
| 5/4/2026 | 6:48:00 PM | Call | (844) 986-2168 |
| 5/5/2026 | 9:24:00 AM | Call | (844) 986-2168 |
| 5/5/2026 | 12:25:00 PM | Call | (844) 986-2168 |
| 5/5/2026 | 3:25:00 PM | Call | (844) 986-2168 |
| 5/6/2026 | 9:46:00 AM | Call | (844) 986-2168 |
| 5/6/2026 | 12:47:00 PM | Call | (844) 986-2168 |
| 5/6/2026 | 3:48:00 PM | Call | (844) 986-2168 |
| 5/7/2026 | 9:45:00 AM | Call | (844) 986-2168 |
| 5/7/2026 | 12:45:00 PM | Call | (844) 986-2168 |
| 5/14/2026 | 12:33:00 PM | Call | (844) 986-2168 |
| 5/14/2026 | 3:34:00 PM | Call | (844) 986-2168 |
| 5/14/2026 | 6:34:00 PM | Call | (844) 986-2168 |
| 5/15/2026 | 9:24:00 AM | Call | (844) 986-2168 |
| 5/15/2026 | 12:24:00 PM | Call | (844) 986-2168 |
| 5/15/2026 | 3:25:00 PM | Call | (844) 986-2168 |
| 5/15/2026 | 7:04:00 PM | Call | (844) 986-2168 |
| 5/16/2026 | 2:21:00 PM | Call | (844) 986-2168 |
| 5/16/2026 | 5:41:00 PM | Call | (844) 986-2168 |
| 5/21/2026 | 2:50:00 PM | Call | (844) 986-2168 |
| 5/22/2026 | 9:35:00 AM | Call | (844) 986-2168 |
| 5/22/2026 | 12:35:00 PM | Call | (844) 986-2168 |
| 5/22/2026 | 3:36:00 PM | Call | (844) 986-2168 |
| 5/23/2026 | 9:45:00 AM | Call | (844) 986-2168 |
| 5/23/2026 | 12:45:00 PM | Call | (844) 986-2168 |
| 5/23/2026 | 3:50:00 PM | Call | (844) 986-2168 |
| 5/24/2026 | 9:46:00 AM | Call | (844) 986-2168 |
| 5/24/2026 | 12:47:00 PM | Call | (844) 986-2168 |
| 5/24/2026 | 3:48:00 PM | Call | (844) 986-2168 |
| 5/25/2025 | 10:32:00 AM | Call | (844) 986-2168 |
| 5/25/2025 | 1:32:00 PM | Call | (844) 986-2168 |
| 5/27/2026 | 3:43:00 PM | Call | (972) 499-2001 |
| 5/28/2026 | 11:11:00 AM | Text | (972) 499-2001 |
| 5/29/2026 | 11:13:00 AM | Text | (972) 499-2001 |
| 5/30/2026 | 11:13:00 AM | Text | (972) 499-2001 |
| 5/31/2026 | 11:09:00 AM | Text | (972) 499-2001 |
| 6/1/2026 | 11:32:00 AM | Text | (972) 499-2001 |
| 6/2/2026 | 11:11:00 AM | Text | (972) 499-2001 |

31. Upon information and belief, Defendant continues to place calls and texts to Plaintiff, as Plaintiff has received additional calls and texts not listed above which also appear to have originated from Defendant.

32. These texts and calls were not made for "emergency purposes," but rather for solicitation purposes.

33. Plaintiff did not have any pre-existing business relationship with Defendant, and was not interested in taking out a mortgage.

34. Plaintiff did not provide Defendant with his prior express consent to be contacted for solicitation purposes.

35. To the extent any established business relationship or consent existed, such EBR/consent was clearly and unequivocally revoked on or around May 4, 2026 when Plaintiff instructed Defendant to stop calling. Defendant continued to place calls and texts after that clear instruction to stop.

36. Defendant knew or should have known that its texts were unwanted, as Plaintiff verbally instructed Defendant not to contact him on at least one occasion.

37. As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation and a sense that her privacy had been invaded by Defendant.

## DIRECT AND VICARIOUS LIABILITY

38. Without the benefit of discovery, Plaintiff understands and therefore alleges Defendant directly placed the calls and texts at issue.

39. However, if some or all of the calls or texts were placed by third-party/parties on behalf of Defendant, in the alternative, Defendant is vicariously liable for those calls and texts.

40. On May 9, 2013, the FCC determined that telemarketers like Defendant cannot avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

41. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

42. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

43. If Defendant directly sent the texts at issue to Plaintiff and the putative class members, Defendant is directly liable for the placing of those texts.

44. However, Defendant may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers.

45. If Defendant did not directly send the texts and the putative class members, Defendant's third-party telemarketers had actual and/or apparent authority to act on behalf of Defendant.

46. Likewise, on information and belief, Defendant also ratified its agents' violations of the TCPA by accepting proceeds from sales imitated by unlawful telemarketing communications.

47. Defendant controlled or had the right to control the marketing activities of those acting on its behalf.

48. Defendant acted as a principal to telemarketing agent(s) who were acting on their behalf.

49. Defendant is not permitted under the law to outsource and contract their way out of liability by directing and benefitting from their agents' TCPA violations.

50. For the count identified below, if Defendant directly sent the text messages at issue, they are directly liable. Alternatively, to the extent any texts were placed by a third-party agent(s) acting on Defendant's behalf, Defendant is vicariously liable for those unlawful communications.

## CLASS ALLEGATIONS

51. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff brings this lawsuit as a class action on behalf of herself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

52. Plaintiff seeks to represent the following class:

**Internal Do-Not-Call Registry (IDNC) Class:** All persons in the United States who (1) received two or more calls or texts to their telephone number; (2) within any 12-month period; (3) placed by or on behalf of Defendant; (4) where at least one of those calls were placed after telling Defendant to stop calling or texting; (5) from four years prior to the date of this complaint through the date the Court certifies the class.

53.     Excluded from the Classes are any entity in which Defendant have a controlling interest or which has a controlling interest in Defendant, and Defendant's owners, affiliates, agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to amend or modify the class definitions consistent with the record.

54.     The putative class members' identities are readily ascertainable from Defendant's records or records within Defendant's control.

55.     Plaintiff's claims are typical of the class members, as all are based on the substantially similar facts and the same legal theories.

56.     Plaintiff will fairly and adequately protect the interests of the Class defined in this complaint. Plaintiff will fairly and adequately protect the interests of the class members insofar and Plaintiff has no interests that are averse to the absent class members. Plaintiff is committed to vigorously litigating this matter.

57.     Neither the Plaintiff nor her counsel have any interests which might cause them not to vigorously pursue this class action lawsuit.

58.     The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor her attorneys have any interests which might cause them not to vigorously pursue this action.

59.     This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules Civil Procedure because there is a well-defined community interest in the litigation.

60.     Class Members are so numerous that the individual joinder of all class members is impracticable. There are no likely difficulties to be encountered in managing this case as a class action.

61.     Common questions of law and fact exist to all Class Members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to the following:

a.  Whether the text messages/calls were "solicitations" as defined by 47 U.S.C. § 227(a)(4);

b.  Whether Defendant properly implemented an internal do-not-call policy;

c.  Whether Defendant's conduct violates 47 U.S.C. § 227 and the corresponding rules and regulations implementing the TCPA; and

d.  Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

62.     Plaintiff and the putative class members have claims arising out of Defendant's uniform course of conduct, namely improperly placing solicitation calls to Plaintiff and the putative class members.

63.     The class action mechanism is superior to other available means for the fair and efficient adjudication of this case. Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent and contradictory judgments.

11

64.     In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

65.     Based on discovery and further investigation, Plaintiff may, in addition to moving for class certification, use modified definitions of the class, class claims, and the class period, and/or seek class certification only as to particular issues as permitted under Rule 23. Such modified definitions may be more expansive to include consumers excluded from the foregoing definitions.

66.     Based on information and belief, Defendant continues to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendant's conduct and to prevent irreparable harm to Plaintiff and Class members for which they have no adequate remedy at law.

**COUNT I**
**47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)**
**Violation of Internal Do-Not-Call rules**

67.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

68.     Plaintiff brings this Count individually and on behalf of all others similarly situated, in the IDNC Class.

69.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

70.     Plaintiff brings this Count individually and on behalf of all others similarly situated.

12

71.     Section 227(c) of the TCPA requires the FCC to enact regulations to protect residential telephone subscribers' privacy rights. A private right of action exists for failing to maintain and/or provide internal do-not-call policies. 47 U.S.C. § 227(c)(5).

72.     Through those powers delegated by Congress, the FCC promulgated regulations including CFR 64.1200(d) and (e) which provide in relevant part:

No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1)     Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2)     Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3)     Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made [and] must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. . . .

(4)     Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

47 C.F.R. § 64.1200(d), (e).

73.     Defendant and/or their agents violated 47 C.F.R. § 64.1200(d)(3) by making telemarketing calls while they failed to honor consumer requests not to receive calls from or on behalf of Defendant, and/or did not record such requests. Even after Plaintiff clearly expressed his desire not to receive any more telephone calls from Defendant, it placed additional calls and texts to Plaintiff.  Defendant failed to honor consumer requests not to receive calls from or on behalf of Defendant.

74.     On information and belief, and in addition or the alternative, Defendant and/or their agents violated 47 C.F.R. § 64.1200(d)(2) by making telemarketing calls while they had failed to train their personnel in the existence and use of their do-not-call list. Plaintiff alleges violations of 47 C.F.R. § 64.1200(d) above. To the extent Defendant claim they instituted and maintained procedures and minimum standards prescribed by 47 C.F.R. § 64.1200(d), but that their personnel made a mistake implementing their do-not-call list, Defendant failed to adequately train their personnel.

75.     Defendant violated 47 C.F.R. § 64.1200(d) by initiating two or more telephone solicitations to wireless and wireline residential telephone subscribers such as Plaintiff and the other IDNC Class members while failing to institute or maintain procedures and minimum standards required under 47 C.F.R. § 64.1200(d).

76.     Defendant violated Plaintiff's rights under § 227(c) and CFR § 64.1200(d) through the aforementioned acts and omissions.

77.     Defendant' violations were knowing and willful because they knew they had failed to institute or maintain procedures and minimum standards required under 47 C.F.R. § 64.1200(d) in the manner alleged above.

14

78.     The acts and/or omissions of Defendant were done unfairly, unlawfully, intentionally, recklessly, willfully and absent any legal justification or excuse.

79.     Plaintiff and IDNC Class members are entitled to damages of $500.00 per violation for each call placed and text sent by Defendant and up to $1,500.00 per violation if the Court finds Defendant willfully violated the TCPA.

80.     Plaintiff, on behalf of himself, and on behalf of the other IDNC Class members, seeks injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendant to stop their violations of the TCPA.

## PRAYER FOR JUDGMENT

WHEREFORE, Plaintiff, Noverto Rosado, individually, and on behalf of all other similarly situated, requests the Court grant the following relief against Defendant Rocket Mortgage, LLC, as follows:

a.  Enter an order against Defendant pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Plaintiff as the class representative for the IDNC Class;

b.  Enter an order appointing Kimmel & Silverman, P.C. as class counsel for the IDNC Class;

c.  Enter judgment in favor of Plaintiff and the NDNC Class for all damages available under the TCPA, including actual and statutory damages per violation of 47 U.S.C. § 227(c) consistent with proof at trial;

d.  Award Plaintiff and the IDNC Class such further and other relief the Court deems just and appropriate.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

*/s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq.
Michigan ID No. 84351

15

Kimmel & Silverman, P.C.
30 East Butler Ave.
Ambler, PA 19002
Telephone: (267) 468-5374
Facsimile: 215-540-8817
jginsburg@creditlaw.com
teamkimmel@creditlaw.com
*Attorneys for Plaintiff*

Dated: July 15, 2026